UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

---------------------------------------------------------------

|  |  |  |
|---|---|---|
| : |  |  |
| SOURYANA KOUIDER, | : | CASE NO. 1:19-cv-02294 |
| on behalf of her minor child, Y.C. | : |  |
| : |  |  |
| Plaintiff, | : |  |
| : |  |  |
| v. | : | OPINION & ORDER |
| : | [Resolving Docs. 36, 45] |  |
| PARMA CITY SCHOOL DISTRICT | : |  |
| BOARD OF EDUCATION, *et al.*, | : |  |
| : |  |  |
| Defendants. | : |  |
| : |  |  |

---------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Souryana Kouider sues Parma School District Board of Education and a school-resource officer, Antonio Baez, on behalf of her minor child, Y.C.  Plaintiff brings federal constitutional and state-law claims arising out of an incident in which Y.C. had an emotional outburst during recess.  During the outburst, Plaintiff alleges that Defendant Baez physically restrained Y.C. and then escorted Y.C. to the principal's office.  In the principal's office, Plaintiff alleges that Defendant Baez intentionally sprayed Y.C. in the face with a juice box.

Defendants Baez and the School District separately move for summary judgment on all claims.[1]  Plaintiff opposes,[2] and Defendants reply.[3]

For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motions for summary judgment.

---

[1] Doc. 36 (Parma); Doc. 45 (Baez).
[2] Doc. 48; Doc. 49.
[3] Doc. 52 (Parma); Doc. 53 (Baez).

Case No. 1:19-cv-02294
Gwin, J.

## Background

At the relevant time, Plaintiff Y.C. was an 8-year-old, third-grade student at John Muir Elementary School in the Parma City School District ("School District").[4]  Y.C. has anxiety and Attention-Deficit Hyperactivity Disorder, and he has had behavioral problems at school since the first grade.[5]  Y.C. is Arab-American.[6]

### I.  Playground Incident

On September 18, 2019, during recess, Y.C. played atop the school's jungle gym and refused to let girl students use the jungle-gym slides.[7]  Y.C. called other students names and ultimately "got[] a little bit physical and started to push and kind of kick people."[8]

Meanwhile, the School District's lead school-resource officer, Defendant Antonio Baez, was at John Muir to train a new school-resource officer, Nonparty Nick Santora.[9]  Officers Baez and Santora were leaving the school when they heard a child screaming at the jungle gym.[10]  They turned back to assist.[11]  Defendant Baez climbed the jungle gym and confronted Y.C.[12]  Baez convinced Y.C. to sit down, and Baez and Y.C. went down the slide together.[13]

---

[4] Doc. 38 at 8, 34; Doc. 43 at 8.
[5] Doc. 38 at 16-23, 27, 33; Doc. 39 at 16; Doc. 40 at 11-12.
[6] Doc. 39 at 11.
[7] Doc. 41 at 40.
[8] Doc. 42 at 15.
[9] Doc. 41 at 31-32; Doc. 44 at 13.
[10] Doc. 41 at 39.
[11] *Id.*
[12] Doc. 41 at 41; Doc. 42 at 16.
[13] Doc. 41 at 41-42; Doc. 42 at 16.

Case No. 1:19-cv-02294
Gwin, J.

Y.C. ran off to a parking lot area.[14]  Santora apprehended Y.C., and then Santora and Defendant Baez escorted Y.C. to a bench.[15]  The officers restrained Y.C. on the bench while Y.C. was "screaming, yelling, spitting, [and] doing all sorts of things."[16]

At one point, Baez held Y.C.'s shirt over Y.C.'s face.[17]  Baez later said that this was to prevent Y.C.'s spitting.[18]  The school's "behavior analyst," Hollee Anderson, later opined that Baez's shirt-over-the-face technique was inappropriate and filed an abuse report against Baez.[19]

## II.  Principal's Office Juice-Squirting

Santora and Defendant Baez escorted Y.C. to Principal Karl Schneider's office.[20] Once in the principal's office, Officers Baez and Santora sat Y.C. in a chair between them.[21]  Y.C. continued his temper tantrum—flailing at the officers, screaming that he wanted his "red Doritos," and trying to escape the office.[22]  At one point, Y.C. dove under a table and unplugged cords from the wall.[23]  According to Y.C., the officers pulled Y.C. out from under the table by his feet and ankles.[24]  Principal Schneider left the office to look for the red Doritos.[25]  He returned with Y.C.'s lunch bag, but the red Doritos were not in it, so Schneider left again to continue the search.[26]

---

[14] Doc. 42 at 16; Doc. 44 at 43.
[15] Doc. 42 at 17; Doc. 44 at 43.
[16] Doc. 42 at 17.
[17] *Id.*
[18] Doc. 41 at 44.
[19] Doc. 42 at 5-7, 17-18; Doc. 43 at 22-23, 48-49.
[20] Doc. 41 at 44.
[21] *Id.* at 50.
[22] Doc. 40 at 16-19; Doc. 41 at 50; Doc. 44 at 44.
[23] Doc. 40 at 18; Doc. 41 at 48.
[24] Doc. 40 at 18.
[25] Doc. 41 at 50; Doc. 44 at 44.
[26] Doc. 41 at 51-52.

Case No. 1:19-cv-02294
Gwin, J.

While Principal Schneider looked for the Doritos, Defendant Baez offered Y.C. the contents of his lunch bag, including a Capri Sun juice pouch ("juice box").[27]  The Parties dispute what happened next.

In Y.C.'s version, Officer Baez inserted the straw into the juice box and took a sip.[28] Baez handed the juice box to Y.C. but Y.C. did not want it, so Y.C. put the juice box down on the floor.[29]  According to Y.C., Defendant Baez then picked up the juice box and sprayed it on Y.C.[30]

In Defendant Baez's version, Baez offered Y.C. the juice box, but Y.C. did not want it, so Baez placed the juice box on a nearby table.[31]  When Baez looked away, Y.C. grabbed the juice box and intentionally sprayed Baez and Santora.[32]  Baez then grabbed the juice box, and, when Y.C. tried to hang on, Y.C. "sprayed himself . . . underneath his chin."[33]

Nonparty Santora originally corroborated Baez's version in incident reports.[34] However, Santora later recanted.  In his deposition, Santora testified that, in creating the incident reports, Baez had pressured Santora to present the facts in a light favorable to Baez.[35]  But Santora testified that the juice-squirting incident actually transpired as follows:

> From what I saw, Tony [Baez] put the straw in.  It looked like he may have taken a sip, I'm not sure.  He gave the juice box to the kid. The kid grabbed it with two hands, started spraying it all over Tony, the desk, slightly me.

---

[27] Doc. 41 at 52, 57-58.
[28] Doc. 40 at 20.
[29] *Id.* at 23-24.
[30] *Id.* at 20.
[31] Doc. 41 at 58.
[32] *Id.*
[33] Doc. 41 at 62.
[34] Doc. 44 at 42, 80, 82.
[35] *Id.* at 46-47.

Case No. 1:19-cv-02294
Gwin, J.

> Tony grabbed it, ripped it out of the kid's hands, and sprayed it up and down on the kid's face.[36]

The Parties also dispute whether Defendant Baez called Y.C. a "DACA" in the principal's office.  DACA is an acronym for Deferred Action for Child Arrivals—a federal immigration policy.  In depositions, Y.C.'s sister testified that Baez pejoratively called Y.C. a DACA during the incident.[37]  However, Y.C. himself testified that he was not called a DACA,[38] and both Baez and Santora deny calling Y.C. a DACA.[39]

After the juice-squirting incident, Principal Schneider returned and gave Y.C. his Doritos and some cold water.[40]  A school official contacted Y.C.'s father, who took Y.C. home.[41]  The school suspended Y.C. for 10 days.[42]

### III.  Lawsuit Against the School District and Officer Baez

On October 1, 2019, Plaintiff Souryana Kouider sued on Y.C.'s behalf against Defendants Baez and the School District for the September 18, 2019 incidents.[43]  Plaintiff sues Baez in his official and individual capacities, claiming that Baez violated Y.C.'s Fourth and Fourteenth Amendment rights (Counts I – II).  Plaintiff sues the School Board for inadequately training Defendant Baez and Officer Santora (Count III).  Finally, Plaintiff brings supplemental state-law claims against both Defendants for intentional infliction of emotional distress, assault, and battery (Counts IV – V).

---

[36] *Id.* at 17.
[37] Doc. 38 at 54.
[38] Doc. 40 at 28.
[39] Doc. 41 at 15; Doc. 44 at 11.
[40] Doc. 41 at 49; Doc. 43 at 44.
[41] Doc. 43 at 44.
[42] *Id.*
[43] Doc. 1.  Plaintiff later amended her complaint.  Doc. 25.

Case No. 1:19-cv-02294
Gwin, J.

On June 22, 2020, Defendants Baez and the School District separately moved for summary judgment on all claims.[44]  Plaintiff opposes,[45] and Defendants reply.[46]

## Summary Judgment Standard

Summary judgment is appropriate where the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.[47]  In response to a summary judgment motion properly supported by evidence, the nonmoving party is required to present some "significant probative evidence which makes it necessary to resolve parties' differing versions of the dispute at trial."[48]  The Court construes all evidence in the light most favorable to the nonmoving party.[49]

## Discussion

### I.   Abandoned Claims

Plaintiff did not address Defendants' motions for summary judgment on the following claims: equal protection claims on the basis of disability against both Defendants (Count I); intentional infliction of emotional distress against the School District (Count IV); and assault and battery against the School District (Count V).

Plaintiff has therefore abandoned these claims.[50]  The Court **GRANTS** Defendants' motion for summary judgment as to these claims.

---

[44] Doc. 36 (Parma); Doc. 45 (Baez).
[45] Doc. 48; Doc. 49.
[46] Doc. 52 (Parma); Doc. 53 (Baez).
[47] Fed. R. Civ. P. 56(a).
[48] *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989).
[49] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 601 (1986).
[50] *See Sancap Abrasives Corp. v. Swiss Indus. Abrasives Grp.*, 68 F. Supp. 2d 853, 862 (N.D. Ohio 1999) (dismissing claims as abandoned where plaintiff failed to address, much less support, claims in response to summary judgment motion).

Case No. 1:19-cv-02294
Gwin, J.

## II.  Constitutional Claims (Counts I – III)

Defendants move for summary judgment on all federal constitutional claims (Counts I – III).  The Court considers Defendant Baez's motion first, followed by Defendant School District's motion.

### A.  42 U.S.C. § 1983 Claims Against Officer Baez (Counts I – II)

As a preliminary matter, the Court notes that Plaintiff has sued Officer Baez individually and in his official capacities as an employee of the School District.

#### 1.  Official Capacity Claims

Suing a government employee in his official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent."[51]  "[W]hen a § 1983 complaint asserts a claim against a government entity and a government official in his official capacity, federal courts will dismiss the official-capacity claim."[52]

Here, Plaintiff has sued Defendant School District directly with a *Monell* failure-to-train claim.  Therefore, Plaintiff's claims against Defendant Baez in his official capacity are redundant and are hereby **DISMISSED**.

#### 2.  Individual Capacity Claims - Merits

With respect to Plaintiff's § 1983 claims asserted against Defendant Baez in his individual capacity, Defendants argue that Plaintiff's claims fail on the merits.[53]  Defendant

---

[51] *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690 n. 55 (1978)).

[52] *Brooks v. Skinner*, 139 F. Supp. 3d 869, 890 (S.D. Ohio 2015) (citing *Doe v. Claiborne Cty., Tenn. By & Through Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 509 (6th Cir. 1996)); *accord Agema v. City of Allegan*, No. 1:12-CV-417, 2015 WL 1022084, at *2 (W.D. Mich. Mar. 9, 2015) (collecting cases).

[53] Doc. 36-1 at 9; Doc. 45 at 18-22.

Case No. 1:19-cv-02294
Gwin, J.

Baez also argues that he is entitled to qualified immunity on these claims.[54]  The Court first

considers the merits arguments.

Plaintiff brings her constitutional claims under 42 U.S.C. § 1983.  To recover

under § 1983, a plaintiff must prove that a defendant, while acting under color of state law,

violated rights secured by the Constitution or laws of the United States.[55]

In this case, there is no question that Defendant Baez was acting under color of state

law at the time of the events in question.  The relevant question therefore is whether

Defendant Baez violated Y.C.'s rights secured by the Constitution or laws of the United

States.  At the summary-judgment stage, the Court considers whether Plaintiff has at least

created a dispute of fact as to each claim's required elements.

### a.  Equal Protection Claim (Count I)

Plaintiff brings an equal protection claim against Defendant Baez.  Plaintiff alleges

Defendant Baez "targeted" Y.C. because Y.C. is an Arab-American.[56]  Plaintiff says that the

Court can infer Baez's discriminatory intent because Baez pejoratively called Y.C. a

DACA.[57]

In Defendants' motions for summary judgment, Defendants argue that Plaintiff's

equal protection claim fails because Plaintiff has adduced no admissible evidence that

anyone called Y.C. a DACA.[58]

---

[54] Doc. 45 at 16.
[55] *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970).
[56] Doc. 25 at 7.
[57] Doc. 49 at 16.  "'DACA' is an acronym for Deferred Action for Child Arrivals but is used pejoratively by [school resource officers] based on the ethnicity and ancestry of the parents of [Y.C.]."  Doc. 25 at 4.
[58] Doc. 36-1 at 10-11; Doc. 45 at 20.

Case No. 1:19-cv-02294
Gwin, J.

The Equal Protection Clause prohibits state conduct that discriminates on the basis of membership in a suspect class, such as race and national origin.[59]  To prove an equal protection claim, a plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."[60]  A court may consider derogatory, racially-inflected comments in determining whether a state officer acts with discriminatory purpose.[61]

In this case, Plaintiff's allegations, properly supported, could state an equal protection claim.  Plaintiff argues that Baez pejoratively called Y.C. a DACA during the incident in the principal's office.[62]  This racially-inflected comment would tend to show that Baez acted with a discriminatory purpose.

However, Plaintiff does not properly support the equal protection claim.  Plaintiff offers no admissible corroboration that Defendant Baez called him a DACA.  During Y.C.'s deposition, Y.C. stated that he did not remember being called a DACA.[63]  And both Baez and Santora deny calling Y.C. a DACA.[64]

---

[59] *See Washington v. Davis*, 426 U.S. 229, 239 (1976).
[60] *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also McCleskey v. Kemp*, 481 U.S. 279, 292 (1987).
[61] *See, e.g., Bennett v. City of Eastpointe*, 410 F.3d 810, 831 (6th Cir. 2005) ("[S]ummary judgment was particularly inappropriate because of the alleged racial tones to the officer[s'] conduct."); *King v. City of Eastpointe*, 86 F. App'x 790, 803 (6th Cir. 2003) ("Although the question is close, the evidence of the use of a possibly racial epithet raises an issue of fact as to whether [a defendant's] actions . . . were based on race."); *Carrasca v. Pomeroy*, 313 F.3d 828, 834 (3d Cir. 2002) (observing that a factfinder could determine that an officer's reference to plaintiffs as "Mexicans" was stated as a pejorative racial slur and demonstrated a racially discriminatory purpose).
[62] Doc. 25 at 4; Doc. 49 at 16.
[63] Doc. 40 at 27-28.
[64] Doc. 41 at 15; Doc. 44 at 11.

-9-

Case No. 1:19-cv-02294
Gwin, J.

Plaintiff's only evidence that a school resource officer called Y.C. a DACA comes from Y.C.'s sister's deposition.[65]  Y.C.'s sister stated that Y.C. had told her that a school resource officer had called Y.C. a DACA.[66]

However, because Y.C.'s sister's statement is inadmissible hearsay, the Court does not consider it at the summary-judgment stage.  Federal Rule of Evidence 801 defines hearsay as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."[67]  In the Sixth Circuit, "it is well established that a court may not consider hearsay when deciding a summary judgment motion."[68]

Y.C.'s sister's statement is an out-of-court statement introduced to prove the truth of the matter asserted—that a school-resource officer called Y.C. a DACA.  The statement is therefore hearsay, and Plaintiff fails to explain how the statement would be admissible under one of the Rule 803 and 804 hearsay rule exceptions.[69]

Accordingly, Plaintiff finds no admissible evidence to support her equal protection claim.  The Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's equal protection claim.

---

[65] Y.C.'s mother's deposition also references the DACA comment, Doc. 39 at 26-27, but Plaintiff's summary-judgment opposition does not rely on her testimony.  In any event, Y.C.'s mother's statement suffers the same hearsay problem as Y.C.'s sister's testimony.

[66] Doc. 38 at 53-54.

[67] Fed. R. Evid. 801(c).

[68] *Tranter v. Orick*, 460 F. App'x 513, 514 (6th Cir.2012).  Although some forms of hearsay may be considered (affidavits, depositions, answers to interrogatories), the evidence must be admissible at trial.  *Id.*  In other words, the evidence need not be in admissible *form*, but its *content* must be admissible.  *Id.* at 515 (quoting *Bailey v. Floyd Cnty. Bd. of Educ.,* 106 F.3d 135 (6th Cir.1997)).

[69] Statements that are properly considered hearsay are inadmissible unless they fall within one of the exceptions to the hearsay rule found in Rules 803 and 804.  Fed. R. Evid. 802, 803–804.

Case No. 1:19-cv-02294
Gwin, J.

### b.  Substantive Due Process Claim (Count I)

Plaintiff brings a substantive due process claim against Defendant Baez.[70]  Plaintiff alleges that Defendant Baez violated Y.C.'s substantive due process right to bodily integrity when Baez sprayed Y.C. with juice and tried to cover it up.[71]

Public school students have the substantive due process right "to be free of state intrusions into realms of personal privacy and bodily security."[72]  In the Sixth Circuit, courts evaluate such claims under the "shocks the conscience" standard.[73]  That is, to raise a material issue of fact as to whether Defendant Baez violated Y.C.'s rights to personal security and freedom from abuse at the hands of state officials, Plaintiff "must identify conduct that is 'so brutal, demeaning, and harmful as literally to shock the conscience.'"[74]

In assessing what conduct "shocks the conscience," there is no "calibrated yard stick."[75]  But generally speaking, "[c]onduct shocks the conscience if it 'violates the decencies of civilized conduct.'"[76]  Actions that shock the conscience are generally so brutal and offensive that they do not comport with traditional ideas of fair-play and decency.[77]

The Sixth Circuit has set a high bar for conduct that shocks the conscience.[78]  For instance, in *Lillard v. Shelby Cty. Bd. of Educ.*, the Sixth Circuit concluded that a teacher's

---

[70] Doc. 25 at 7.
[71] *Id.*; Doc. 49 at 18-22.
[72] *Webb v. McCullough,* 828 F.2d 1151, 1158 (6th Cir. 1987).
[73] *Domingo v. Kowalski*, 810 F.3d 403, 410 (6th Cir. 2016).
[74] *Id.* (quoting *Webb,* 828 F.2d at 1158).
[75] *Cty. of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998).
[76] *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Lewis,* 523 U.S. at 846-47).
[77] *Id.* at 589-90.
[78] In *Domingo v. Kowalski,* the Sixth Circuit found that a special education teacher's conduct did not "shock the conscience" where the teacher was accused of "gagging one student with a bandana to stop him from spitting, strapping another to a toilet to keep her from falling from the toilet, and forcing yet another to

Case No. 1:19-cv-02294
Gwin, J.

single slap of student did not violate the student's substantive due process rights.[79]  Further, the Sixth Circuit held that the same teacher's rubbing of a separate student's stomach, accompanied by a sexually suggestive remark, did not violate the student's substantive due process rights.[80]

In the school context, the Sixth Circuit has adopted two distinct frameworks for assessing whether a student's constitutional claim "shocks the conscience": one for excessive corporal punishment, the other for educational techniques involving force.[81]

Neither framework quite fits the instant case's juice-squirting incident.  The alleged juice-squirting was arguably not corporal punishment, and it certainly was not an educational technique.  Nonetheless, the Court briefly considers how each test bears on the facts of this case.

Under the corporal punishment inquiry, courts assessing whether conduct shocks the conscience consider "whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking the conscience."[82]

Applied here, the corporal punishment test tends to suggest that Baez's alleged conduct was conscience-shocking.  There is a dispute of fact whether Y.C.'s emotional

---

sit with her pants down on a training toilet in full view of her classmates to assist her with toilet-training."
810 F.3d at 406, 410-11.
[79] *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).
[80] *Id.*
[81] *Domingo*, 810 F.3d at 411.
[82] *Webb*, 828 F.2d at 1158 (quoting *Hall*, 621 F.2d at 613).

Case No. 1:19-cv-02294
Gwin, J.

injury was severe; there was no need for the juice-squirting; and there is a dispute of fact

whether Baez's conduct was inspired by malice or sadism.

The second school-setting framework considers whether educational techniques

involving force shock the conscience.  The test asks:

> a) Was there a pedagogical justification for the use of force?;
> b) Was the force utilized excessive to meet the legitimate objective in this situation?;
> c) Was the force applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm?; and
> d) Was there a serious injury?[83]

This second test also suggests that Baez's alleged conduct was conscience-shocking.

As to the first factor, there is no arguable pedagogical justification for spraying a child with

juice.  The second factor is inapplicable.  As to the third factor, there is a dispute of fact

whether Officer Baez's actions were malicious and sadistic.  As to the fourth factor, there

was arguably a serious injury or at least a factual dispute regarding one.

Thus, the two above-mentioned tests suggest that Plaintiff has demonstrated a

factual dispute as to whether Defendant Baez's conduct shocks the conscience.  On the

other hand, this remains a close question in light of Sixth Circuit precedent that raises the

bar high for conscience-shocking behavior.

Ultimately, the Court concludes that Plaintiff's substantive due process claims

survive Defendants' motions for summary judgment.  The Court is swayed by the fact that

Y.C.'s disability makes him especially vulnerable and that Baez's alleged conduct was

unjustifiable.  Indeed, "conduct intended to injure in some way *unjustifiable by any*

---

[83] *Domingo*, 810 F.3d at 411 (quoting *Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 173 (3d Cir. 2001)).

-13-

Case No. 1:19-cv-02294
Gwin, J.

*government interest* is the sort of official action most likely to rise to the conscience-shocking level."[84]

Accordingly, as to the merits arguments, the Court **DENIES** Defendants' motions for summary judgment on the substantive due process claims.  The Court discusses Defendant Baez's qualified immunity argument below.

### c.  Fourth Amendment Claims (Count II)

Plaintiff brings a Fourth Amendment claim against Defendant Baez.[85]  In her complaint and opposition brief, Plaintiff is ambiguous as to whether her Fourth Amendment claim is an excessive force claim or an unlawful seizure claim.[86]  The Court considers each potential claim in turn.

### i.  The Court Dismisses Plaintiff's Excessive Force Claim as Duplicative of His Substantive Due Process Claim.

Where claims for excessive force have been asserted by public school students against public school employees, the Sixth Circuit, consistent with other circuit courts, has applied the shocks-the-conscience standard to determine whether liability should exist.[87]  Where plaintiffs have brought both Fourth Amendment excessive force claims and

---

[84] *Lewis,* 523 U.S. at 847 (emphasis added).

[85] Doc. 25 at 8-9.

[86] *See id.*; Doc. 49 at 22; *cf. Humphrey v. Mabry,* 482 F.3d 840, 848-51 (6th Cir.2007) (analyzing unlawful seizure and excessive force claims separately).

[87] *Nolan v. Memphis City Sch.,* 589 F.3d 257, 269 (6th Cir.2009) (applying the shocks-the-conscience standard to § 1983 claims premised on allegations of physical abuse of a student by a teacher); *Lillard v. Shelby Cnty. Bd. of Educ.,* 76 F.3d 716, 725 (6th Cir.1996) (applying the shocks-the-conscience standard even though "the record fail[ed] to reflect any legitimate disciplinary purpose occasioning the slap to" a student); *see also C.N. v. Willmar Pub. Sch.,* 591 F.3d 624, 634 (8th Cir.2010) ("This circuit has generally analyzed claims alleging excessive force by public school officials under the rubric of substantive due process, however, and not the Fourth Amendment.").

-14-

Case No. 1:19-cv-02294
Gwin, J.

Fourteenth Amendment substantive due process claims, courts have dismissed the Fourth

Amendment claims as duplicative.[88]

Accordingly, to the extent Plaintiff's Fourth Amendment claim is for excessive force,

it is **DISMISSED** as a separate claim because it is more appropriately analyzed under the

substantive due process claim in Count One using the "shocks-the-conscience" standard.[89]

### ii. Plaintiff Fails to Give Enough Evidence for an Unlawful Seizure Claim.

The Court next considers Plaintiff's remaining Fourth Amendment claim—unlawful

seizure.[90]  With Plaintiff's unlawful seizure claim, Plaintiff alleges that Baez acted

unreasonably when he physically restrained Y.C., pulled Y.C.'s shirt over his face, detained

Y.C. in the principal's office, and sprayed Y.C. with juice.[91]  Plaintiff says Defendant's

actions caused Y.C. "severe emotional distress."[92]

Defendants argue that Plaintiff's Fourth Amendment claim fails because Defendant

Baez acted reasonably.[93]

The Fourth Amendment protects "[t]he right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."[94]

The Fourth Amendment applies to the school setting.[95]

---

[88] *See H.M. v. Bd. of Educ. of the Kings Local Sch. Dist.*, No. 1:14-CV-64, 2015 WL 4624629, at *4 (S.D. Ohio Aug. 3, 2015); *Gohl v. Livonia Pub. Sch.*, 134 F. Supp. 3d 1066, 1083 (E.D. Mich. 2015), *aff'd*, 836 F.3d 672 (6th Cir. 2016).

[89] *See H.M.*, 2015 WL 4624629, at *4.

[90] *Id.* at *3 ("The Court agrees that the Fourth Amendment excessive force claim is subject to the "shocks-the-conscience" analysis, but concludes that the Fourth Amendment unlawful seizure claim may be maintained as a separate claim at this time.")

[91] Doc. 25 at 8-9; Doc. 49 at 22.

[92] Doc. 25 at 9.

[93] Doc. 36-1 at 15; Doc. 45 at 17.

[94] U.S. Const. Amend. IV.

[95] *See New Jersey v. T.L.O.,* 469 U.S. 325, 336-37 (1985).

Case No. 1:19-cv-02294
Gwin, J.

The first question to consider is whether there was a "seizure" under the Fourth

Amendment.   A seizure generally occurs when, in view of all the surrounding

circumstances, "a reasonable person would have believed that he was not free to leave."[96]

In a school setting, the Fourth Amendment must be viewed differently.  As one circuit court

has explained:

> We must think about seizures differently in the school context, as students are
> generally not at liberty to leave the school building when they wish.  . . . .
> To qualify as a seizure in the school context, the limitation on the student's
> freedom of movement must significantly exceed that inherent in every-day,
> compulsory attendance.[97]

Here, Plaintiff's allegations are sufficient to satisfy the burden of showing a plausible

seizure exceeding that inherent in compulsory attendance.  Plaintiff alleges that Defendant

Baez restrained Y.C. by physically removing him from the playground and detaining him in

the principal's office.[98]

The next questions are whether that seizure was justified at its inception and

whether the seizure was permissible in scope.[99]  A seizure is "permissible in its scope

when the measures adopted are reasonably related to the objectives of the [seizure] and

not excessive[ ] . . . in light of the age and sex of the student and the nature of the

infraction."[100]

Here, Plaintiff fails to give sufficient evidence that the seizure was not permissible in

its scope.  At the playground, Y.C. had acted out on the jungle-gym slide.[101]  After Baez

---

[96] *Michigan v. Chesternut,* 486 U.S. 567, 573 (1988); *see also United States v. Lopez–Medina,* 461 F.3d 724, 739 (6th Cir. 2006).

[97] *Couture v. Bd. of Educ. of Albuquerque Pub. Sch.,* 535 F.3d 1243, 1250-51 (10th Cir. 2008).

[98] Doc. 42 at 17; Doc. 44 at 43.  Doc. 41 at 44.

[99] *Edwards v. Rees,* 883 F.2d 882, 884 (10th Cir. 1989); *see also Couture,* 535 F.3d at 1250.

[100] *T.L.O.,* 469 U.S. at 342.

[101] Doc. 41 at 40.

-16-

Case No. 1:19-cv-02294
Gwin, J.

convinced Y.C. to come off the jungle gym, Y.C. ran to a parking lot area.[102]  After taking

Y.C. to a bench, Y.C. began screaming and spitting.[103]  Against this backdrop, Baez could

reasonably require Y.C to go to the principal's office.

In sum, the evidence fails to create a dispute of fact whether the seizure was

reasonable in scope.  Accordingly, as to the merits argument, the Court **GRANTS**

Defendants' motion for summary judgment on Plaintiff's Fourth Amendment unlawful

seizure claim.

### 3.  Individual Capacity Claims – Qualified Immunity

Having found that Plaintiff's substantive due process claim survives Defendants'

motion for summary judgment on the merits, the Court turns to Defendant Baez's qualified

immunity argument.

Under the doctrine of qualified immunity, government officials are not liable for

civil damages "insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."[104]

The Supreme Court has described a two-part analysis for resolving government

officials' qualified immunity claims.   First, a court must ask whether, taken in the light

most favorable to the plaintiff, the defendant's conduct violated a constitutional

right.[105]  Second, the court must determine whether the constitutional right was "clearly

established" at the time of the defendant's conduct.[106]  A court may begin its analysis with

---

[102] Doc. 42 at 16; Doc. 44 at 43.
[103] Doc. 42 at 17.
[104] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) (internal quotations omitted)).
[105] *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).
[106] *Id.*

-17-

Case No. 1:19-cv-02294
Gwin, J.

either prong, but both questions must be answered in the affirmative for liability to

attach.[107]

As explained in the merits analysis above, Plaintiff has sufficiently alleged that

Officer Baez's conduct violated Y.C.'s substantive due process right to bodily integrity.

Thus, the Court must determine whether this constitutional right was "clearly established"

at the time of Baez's conduct.[108]

With respect to the substantive due process claim, the right to be free from physical

abuse at the hands of state actors in the school setting, particularly where it is not

administered for any pedagogical purpose, is clearly established.[109]  More specifically, in

1987, the Sixth Circuit has held that:

> [T]he right to be free of state intrusions into realms of personal privacy and
> bodily security through means so brutal, demeaning, and harmful as literally
> to shock the conscience . . . [is c]learly recognized in persons charged with or
> suspected of crime and in the custody of police officers[.  W]e simply do not
> see how we can fail also to recognize it in public school children under the
> disciplinary control of public school teachers.[110]

And as recognized by the Supreme Court in 1998, conduct "intended to injure"

without any justifiable government interest most clearly will rise to the conscience-

shocking level.[111]

---

[107] *Id.* at 236.
[108] *Id.* at 232.
[109] *Webb v. McCullough,* 828 F.2d 1151, 1158 (6th Cir.1987); *see also* Ohio Rev. Code
§ 333319.41.
[110] *Webb v. McCullough,* 828 F.2d 1151, 1158 (6th Cir. 1987) (quoting *Hall v. Tawney,* 621 F.2d
607, 613 (4th Cir. 1980)).
[111] *Lewis,* 523 U.S. at 848-49; *see also Range,* 763 F.3d at 590 (relying on *Lewis*).

-18-

Case No. 1:19-cv-02294
Gwin, J.

Moreover, the law is clearly established that any conduct of a government officer must be rationally related to a legitimate state interest and that deliberate indifference to an individual's federally protected rights may be conscience-shocking.[112]

As such, a reasonable school employee knew or should have known that actions taken with the intent to injure a special education student and without any pedagogical purpose were constitutionally impermissible, even if the specific actions in question—such as juice-squirting—had not previously been held unlawful.[113]

As the Supreme Court has recognized, "officials can still be on notice that their conduct violates established law" even in novel factual circumstances—such as the instant juice-squirting incident.[114]

Accordingly, the Court rejects Defendant Baez's qualified immunity argument and **DENIES** Defendants' motion for summary judgment on Plaintiff's  substantive due process right to bodily integrity.

### B.  42 U.S.C. § 1983 Claims Against Parma City School District (Count III)

The Court now turns to the remaining § 1983 claim.  Plaintiff brings a *Monell* liability claim against Defendant School District under a failure-to-train theory.[115] Specifically, Plaintiff alleges that the School District failed to adequately train Baez or

---

[112] *Valot v. S.E. Local Sch. Dist. Bd. of Educ.,* 107 F.3d 1220, 1228 (6th Cir. 1997); *Darrah v. City of Oak Park,* 255 F.3d 301, 306 (6th Cir.2001)

[113] *United States v. Lanier,* 520 U.S. 259, 271 (1997).

[114] *Safford Unified Sch. Dist. # 1 v. Redding,* 557 U.S. 364, 377-78 (2009) (quoting *Hope v. Pelzer,* 536 U.S. 730, 741 (2002)).  This is because, as Judge Posner has observed, "[t]he easiest cases don't even arise.  *K.H. Through Murphy v. Morgan,* 914 F.2d 846, 851 (7th Cir. 1990).  For example, "[t]here has never been a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages liability because no previous case had found liability in those circumstances."  *Id.*  Applied here, just because juice-squirting has not been previously found unconstitutional, it does not follow that an official who maliciously squirts juice on children is immune from liability.

[115] Doc. 25 at 9-11; Doc. 49 at 22-24.

Case No. 1:19-cv-02294
Gwin, J.

Santora "to ensure that citizens are not subjected to inappropriate and abusive police misconduct based on disability, ethnicity or for any other reason."[116]  As a result of Defendant's claimed failure to train, Plaintiff alleges that Y.C. "has suffered and will continue to suffer substantial emotional distress, physical pain and suffering."[117]

To defeat summary judgment on a failure-to-train claim, Plaintiff must show or create genuine dispute of material fact that "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the [entity's] deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury."[118]

Plaintiff adduces enough evidence to create a genuine issue of material fact on her failure-to-train claim.

### 1.  Training Adequacy

As to the first prong, Plaintiff has raised a genuine issue of material fact as to whether the training or supervision was inadequate for the tasks performed.  Plaintiff presents evidence that (1) two Parma City School employees asked for more resource-officer training on working with children;[119] and (2) that Baez said that he thought he was not supposed to be monitoring Y.C. and that the administration should have been more involved.[120]

---

[116] Doc. 25 at 10.
[117] *Id.* at 11.
[118] *Winkler v. Madison Cty.*, 893 F.3d 877, 902 (6th Cir. 2018) (quoting *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006)).
[119] Doc. 42 at 19-23 (Anderson requested more training for SROs working with children); Doc. 44 at 12 (Santora requested training for working with children).
[120] Doc. 41 at 60.

Case No. 1:19-cv-02294
Gwin, J.

In opposition, the School District argues and presents evidence that Baez had a day of crisis intervention training.[121]

The School District's argument is unpersuasive.  The question is whether Baez's training was *adequate*—not whether he had any training.  There is a dispute of fact as to whether Baez's training was adequate.

### 2. Deliberate Indifference

As to the second prong, Plaintiff has raised a genuine issue of material fact as to whether the alleged training inadequacy resulted from the School District's deliberate indifference.

The indifference of government officials may be shown where, "in light of the duties assigned to specific . . . employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."[122]  Whether a plaintiff has succeeded in demonstrating such deliberate indifference is generally a question for the jury.[123]

To show the School District's deliberate indifference, Plaintiff presents evidence that two School District employees asked for more resource-officer training.  Specifically, Plaintiff presents evidence that (1) Officer Santora asked for more training on how to work

---

[121] Doc. 36-1 at 17; Doc. 41 at 20.
[122] *City of Canton v. Harris,* 489 U.S. 378, 390 (1989).
[123] *See Lee v. City of Los Angeles,* 250 F.3d 668, 682 (9th Cir. 2001).

Case No. 1:19-cv-02294
Gwin, J.

with children[124] and (2) Behavioral Analyst Hollee Anderson asked for "physical response" training for the school-resource officers.[125]

Defendant School District argues that these requests do not show the deliberate indifference.  Regarding the Santora request, the School District points out that it occurred *after* the Y.C. incident, so that request should not factor into the deliberate indifference analysis.[126]  And regarding the Anderson request, Defendant argues that even though the request occurred *before* the Y.C. incident, Anderson's request does not show Parma's deliberate indifference because Anderson had felt that the School District was receptive to her suggestion.[127]

Defendant Parma City School District is correct as to the Santora request.  Santora's after-the-fact request does not show that the School District was deliberately indifferent as to the allegedly inadequate training.

However, the School District's argument as to the Anderson request misses the mark.  Whether Anderson felt the School District was receptive to her suggestion is irrelevant.  What matters is whether Defendant School District was on notice that its training for school-resource officers was inadequate.  And whether the Defendant School District responded to the problem.

That Anderson requested more training for the officers before the Y.C. incident, along with the egregiousness of Baez's conduct,[128] does tend to show that the School

---

[124] Doc. 42 at 19-23 (Anderson requested more training for SROs working with children); Doc. 44 at 12, 32 (Santora requested training for working with children).
[125] Doc. 42 at 19-23 (Anderson requested more training for SROs working with children).
[126] Doc. 52 at 7.
[127] Doc. 52 at 7-8.
[128] To state a failure-to-train claim absent a pattern of violations, a plaintiff may assert a "single incident" theory of liability by alleging that the constitutional deprivation at issue was the "obvious"

Case No. 1:19-cv-02294
Gwin, J.

District was on notice that its training was deficient.  At this stage of the inquiry, the Court views the facts in light most favorable to the nonmoving party and concludes that Anderson's request and the egregiousness of Baez's conduct create a dispute of fact whether the School District was deliberately indifferent as to the need for more resource-officer training.

### 3.  Causality

As to the third and final prong, Plaintiff has raised a genuine issue of material fact as to whether the alleged training inadequacy was closely related to or actually caused the injury.

In opposition, Defendant School District argues that a lack of training did not cause Y.C.'s injury.[129]  Defendant School District says that it is "patently obvious" that squirting juice on a child is inappropriate, and "[o]ne does not need specialized trained to know that."[130]

Defendant is right that juice-squirting is obviously inappropriate, but, at the summary-judgment stage, the Court cannot conclude that adequate training would not have made a difference.[131]  There is, at the very least, a dispute of material fact whether adequate training could have prevented Baez's alleged conduct and Y.C.'s injury.

In sum, the Court **DENIES** Defendants' motion for summary judgment on Plaintiff's *Monell* liability claim.

---

consequence of the defendant's failure to provide specific training.  *Connick v. Thompson,* 563 U.S. 51, 61 (2011).
[129] Doc. 52 at 9.
[130] *Id.*
[131] Doc. 44 at 12 (Santora testifying that specific training from Parma about working with children would have been beneficial).

-23-

Case No. 1:19-cv-02294
Gwin, J.

### III.  State-Law Claims (Counts IV – V)

Plaintiff brings two supplemental state-law claims against Defendant Baez.  With

Count IV, Plaintiff claims Baez intentionally inflicted emotional distress upon Y.C.[132]  With

Count V, Plaintiff claims Baez deprived Y.C. of his right to be free from assault and

battery.[133]

Defendant Baez argues that he is entitled to summary judgment on these claims

because he is immune from liability under Ohio Rev. Code § 2744.03(A)(6) and because

Plaintiff's claims fail on the merits.[134]

The Court addresses each argument in turn.

### A.  Ohio Statutory Immunity

Ohio Rev. Code § 2744.03(A)(6) provides protection from liability for employees of

political subdivisions unless one of the following applies:

> (a) The employee's acts or omissions were manifestly outside the scope of
> the employee's employment or official responsibilities;
> (b) The employee's acts or omissions were with malicious purpose, in bad
> faith, or in a wanton or reckless manner;
> (c) Civil liability is expressly imposed upon the employee by a section of the
> Revised Code.

Construing the evidence in the light most favorable to Plaintiff, the Court cannot

conclude that Ohio Rev. Code § 2744.03(A)(6) shields Defendant Baez from liability.  As

explained above, there is a dispute of fact whether Defendant Baez acted intentionally,

recklessly, or in bad faith when he sprayed Y.C. with juice—any of which would defeat

immunity under Ohio Rev. Code § 2744.03(A)(6)(b).

---

[132] Doc. 25 at 11.
[133] *Id.* at 13.
[134] Doc. 45 at 22-24.

Case No. 1:19-cv-02294
Gwin, J.

### B. Intentional Infliction of Emotional Distress Claim (Count IV)

Plaintiff brings an intentional-infliction-of-emotional-distress claim against Defendant Baez on the basis of the alleged juice-squirting incident.[135]

To establish a claim for intentional infliction of emotional distress under Ohio law, a plaintiff must prove the following elements:

> (1) the defendant intended to cause, or knew or should have known that his actions would result in serious emotional distress;
> (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community;
> (3) the defendant's actions proximately caused psychological injury to the plaintiff; and
> (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure.[136]

Extreme and outrageous conduct is conduct that goes beyond any possible bounds of decency and is so atrocious that it is "utterly intolerable in a civilized society."[137]  "Mere insults, indignities, threats, annoyances and petty oppressions, or other trivialities" are insufficient to state a claim for relief.[138]  Furthermore, in order for emotional distress to be "serious," it must be an emotional injury "which is both severe and debilitating."[139]

Construing the evidence in the light most favorable to Plaintiff, Plaintiff fails to show intentional infliction of emotional distress.  Specifically, Plaintiff fails to show that Y.C. suffered serious mental anguish as a result of the incident.  Y.C.'s sister says that Y.C. keeps to himself more "and doesn't really talk to us unless when needed."[140]  However, Plaintiff

---

[135] Doc. 25 at 11-13.
[136] *McKee v. McCann*, 102 N.E.3d 38, 45 (Ohio Ct. App. 2017); *accord Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1110 (6th Cir. 2008).
[137] *Yeager v. Local Union 20*, 453 N.E.2d 666, 671 (1983) (abrogated on other grounds).
[138] *Id.*
[139] *Paugh v. Hanks*, 451 N.E.2d 759, 765 (1983).
[140] Doc. 38 at 53.

-25-

Case No. 1:19-cv-02294
Gwin, J.

submits no evidence of a significant change in Y.C.'s mental health treatment after the

incident.  And Defendants submit evidence that Y.C. has been doing well in school since

the incident.[141]

Y.C.'s sister's allegation, standing alone, does not show an emotional injury "which

is both severe and debilitating."[142]  Accordingly, the Court **GRANTS** Defendant Baez's

motion for summary judgment on Plaintiff's intentional infliction of emotional distress

claim.

### C.  Assault and Battery Claim (Count V)

Plaintiff brings an assault-and-battery claim against Defendant Baez on the basis of

the alleged juice-squirting incident.[143]

To establish Plaintiff's claim for assault and battery under Ohio law, she must show

"(1) that the officers acted with an intent to cause harmful or offensive contact and (2) that

such contact occurred (that's battery) or that [Y.C.] *thought* that such contact would occur

(that's assault)."[144]

Construing the evidence in the light most favorable to Plaintiff, the Court concludes

that Plaintiff has created a dispute of fact as to the battery.  Plaintiff adduces evidence that,

with the juice-squinting incident, Defendant Baez intended to cause offensive contact and

that such contact occurred.

Accordingly, the Court **DENIES** Defendant Baez's motion for summary judgment on

Plaintiff's assault-and-battery claim.

---

[141] Doc. 42 at 37.
[142] *Paugh*, 451 N.E.2d at 765.
[143] Doc. 25 at 13.
[144] *Howse v. Hodous*, 953 F.3d 402, 410 (6th Cir. 2020).

Case No. 1:19-cv-02294
Gwin, J.

## Conclusion

For these reasons, the Court **GRANTS IN PART** Defendants' motions for summary

judgment.[145]  The following claims are **DISMISSED**: equal protection claims on the basis of

disability against both Defendants (Count I); equal protection claims on the basis of race or

ethnicity against both Defendants (Count I); all claims under the Fourth Amendment against

both Defendants (Count II); intentional infliction of emotional distress against both

Defendants (Count IV); assault and battery against the School District (Count V); and all

claims against Defendant Baez in his official capacity (Count I - IV).  The Court **DENIES**

Defendants' motions for summary judgment on all other counts.


IT IS SO ORDERED.


Dated: August 19, 2020                                  s/          *James S. Gwin*
                                                       JAMES S. GWIN
                                                       UNITED STATES DISTRICT JUDGE

---

[145] Doc. 36; Doc. 45.